IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SHAUN EVERETT LOWRY**, | Case No. 6:22-cv-01414-IM |
| Petitioner, | **OPINION AND ORDER** |
| v. | |
| **GARRETT LANEY**, Superintendent, Oregon State Penitentiary, | |
| Respondent. | |

**IMMERGUT, District Judge.**

Petitioner Shaun Everett Lowry ("Petitioner"), an individual in custody at Oregon State Penitentiary, filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254 ("Section 2254"). Because Petitioner's habeas petition is barred by the applicable one-year statute of limitations, and because there is no basis for statutory or equitable tolling such that the petition may be rendered timely, the Court denies the Petition for Writ of Habeas Corpus (ECF No.1) and denies a certificate of appealability.

PAGE 1 – OPINION AND ORDER

**BACKGROUND**

In April 2015, Petitioner pleaded guilty in the Douglas County Circuit Court to seven offenses arising from an incident in which Petitioner drove while intoxicated and hit two pedestrians. Those offenses included one count of Manslaughter in the First Degree; one count of Assault in the Second Degree; two counts of Failure to Perform Duties of Driver to Injured Persons; one count of Driving Under the Influence of Intoxicants; and two counts of Recklessly Endangering Another Person. (Resp't Exs. (ECF Nos. 9, 10), Exs. 101, 103.) In a separate proceeding, the trial court sentenced Petitioner to a 190-month term of imprisonment. (Resp't Ex. 103 at 516-518.[1])

Petitioner filed a direct appeal, assigning as error the trial court's failure to merge Petitioner's convictions on two counts of recklessly endangering another person with his convictions for manslaughter and second-degree assault. (Resp't Ex. 105 at 2.) While the appeal was pending, Petitioner moved to modify the judgment in the trial court, seeking the entry of a corrected judgment merging his recklessly endangering another person convictions with the manslaughter and assault convictions. (Resp't Ex. 106 at 1.) The trial court granted Petitioner's motion and entered an amended judgment on October 6, 2016. (*Id.* at 7; Resp't Ex. 101 at 2-8.) The State thereafter moved to dismiss Petitioner's appellate claims as moot. (Resp't Ex. 107 at 1.) On October 13, 2016, the appellate commissioner granted the motion and dismissed Petitioner's appeal as moot. (Resp't Exs. 108, 109.) The appellate judgment issued on December 8, 2016. (*Id.*)

---

[1] When citing Respondent's Exhibits, the Court refers to the exhibit page numbers located in the lower right corner of each exhibit.

PAGE 2 – OPINION AND ORDER

On December 4, 2017, Petitioner, through retained counsel, filed a petition for postconviction relief ("PCR") asserting that his trial attorney had been constitutionally ineffective in several respects and otherwise violated his rights by failing to notify him of a potential conflict of interest. (Resp't Ex. 110.) After a trial, the PCR court denied relief. (Resp't Exs. 162, 163.)

Petitioner appealed, raising four assignments of error. (Resp't Ex. 167 at 3-4.) In a per curiam opinion, the Oregon Court of Appeals affirmed the PCR court's judgment. *Lowry v. Laney*, 317 Or. App. 520 (2020). The Oregon Supreme Court denied review. *Lowry v. Laney*, 370 Or. 214 (2022). The appellate judgment issued on October 20, 2022. (Resp't Ex. 173.)

On September 19, 2022, prior to the issuance of the state appellate judgment, Petitioner filed a Petition for Writ of Habeas Corpus in this Court.[2] With the assistance of retained counsel, Petitioner raises three grounds for relief:

> **Ground One:**  Failure to Investigate.
>
> **Supporting Facts:**  [Trial] Attorney did not perform any witness interviews which would have made a huge impact, failed to subpoena my phone record in time, failed to monitor private investigator, failed to file change of venue motion.
>
> **Ground Two:**  Conflict of Interest.
>
> **Supporting Facts:**  [Trial] Attorney failed to inform me (client) of conflict of interest with aggravating witness to the crime, and had not received a waiver of conflict from either party.
>
> **Ground Three:**  Failure to inform client so that plea was knowingly, voluntarily, or intelligently made.
>
> **Supporting Facts:**  There was such a lack of investigation especially with the lack of witness interviews. [Trial] Attorney actually persuaded me to plea[d] guilty because of all the negative witness statements, well witnesses he had no idea what [they] were going to say other than what was said in the police reports.

---

[2] This Court later granted Respondent's Motion to Dismiss and Deem refiled, ultimately considering the petition filed as of October 21,2022, the day after the PCR appellate judgment issued. (ECF No. 12.)

PAGE 3 – OPINION AND ORDER

> And the conflict of interest, so much would have made a difference in my decision had I know. Plea was not knowingly, voluntarily, or intelligently made.

(Pet. (ECF No. 1), at 5-8.³) Respondent urges the Court to deny habeas relief because Petitioner failed to file the Petition within the statute of limitations. (Resp. to Pet. (ECF No. 7), at 3.) Petitioner argues in response that he timely filed the Petition, and that even if he did not, he is entitled to equitable tolling such as to render the Petition timely. (Pet'r's Sur Reply (ECF No. 16), at 2.)

## DISCUSSION

### I. The One-Year Statute of Limitations

#### A. Legal Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year statute of limitations applies to a petition for a writ of habeas corpus filed "by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). Unless otherwise tolled or subject to delayed accrual, the limitations period commences when the judgment becomes final "by the conclusion of direct review *or the expiration of the time for seeking such review*." 28 U.S.C. § 2244(d)(1)(A) ("Section 2244(d)(1)(A)") (emphasis added). The period of direct review includes the ninety-day period within which a petitioner can petition for writ of certiorari with the United States Supreme Court, whether he files such a petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

The limitations period is statutorily tolled during the pendency of a "a properly filed application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2). A

---

³ The Court refers to the ECF-assigned pagination when citing to the Petition or the parties' briefing in this case.

properly filed application remains "pending until it has achieved final resolution through the State's post-conviction procedure." *Biggs v. Duncan*, 339 F.3d 1045, 1047-48 (9th Cir. 2003) (quoting *Carey v. Saffold*, 536 U.S. 214, 220 (2002)) (internal quotations omitted). The limitations period is not tolled, however, "from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed." *Grant v. Swarthout*, 862 F.3d 914, 918 (9th Cir. 2017) (quoting *Roy v. Lampert*, 465 F.3d 964, 968 (9th Cir. 2006)).

B.    Analysis

After pleading guilty on all charges, Petitioner filed a direct appeal based on the trial court's failure to merge Petitioner's convictions for recklessly endangering another person with his convictions for manslaughter and assault. While the appeal was pending, the trial court, on Petitioner's motion, entered an amended judgment merging those convictions. The State subsequently moved to dismiss Petitioner's direct appeal as moot, and the appellate commissioner granted the motion and dismissed the appeal on October 13, 2016. (Resp't Ex. 108.)

If Petitioner thereafter wished to pursue further proceedings on direct appeal, Oregon law required that he first seek reconsideration of the appellate commissioner's dismissal order before petitioning the Oregon Supreme Court for review. *See* OR. R. APP. P. 7.55(4)(c) (instructing that "a decision of the appellate commissioner is not subject to a petition for review in the [Oregon] Supreme Court, but the decision of the Chief Judge or the Motions Department on reconsideration of a ruling of the appellate commissioner is subject to a petition for review"). However, Petitioner did not seek reconsideration, which must be done "within [fourteen] days after the decision[,]" OR. R. APP. P. 6.25(2), nor did he petition the Oregon Supreme Court for review. The appellate judgment issued on December 8, 2016. (Resp't Ex. 109.)

PAGE 5 – OPINION AND ORDER

On these facts, the parties disagree as to when Petitioner's direct appeal became "final" for the purpose of triggering the AEDPA's one-year statute of limitations. Respondent asserts that because Petitioner did not seek review in the Oregon Supreme Court, the judgment became final, and the one-year statute of limitations began to run, when the time for seeking such review expired. (Resp. at 3-4.) Specifically, Respondent argues that Petitioner did not timely seek reconsideration and therefore "the 'expiration of time' for seeking direct review occurred on October 27, 2016, or [fourteen] days after the Appellate Commissioner's order dated October 13, 2016." (Resp. at 4.) Petitioner disagrees, arguing that "because the appellate commissioner's order was not subject to direct review, th[e] statute of limitations does not begin to run when the time for seeking direct review expires, i.e. fourteen days after the order issued, but rather when the appellate judgment issued [on December 8,2016], ending direct review." (Pet'r's' Sur-Reply at 2.)

In *Gonzalez v. Thaler*, 565 U.S. 134 (2012), the United States Supreme Court made clear that the two prongs marking finality under Section 2244(D)(1)(A) — the "conclusion of direct review" and the "expiration of the time for seeking such review" — each relate to "a distinct category of petitioners." *Gonzalez*, 565 U.S. at 150. Specifically, the "conclusion of direct review" prong applies those who "pursue direct review all the way to [the Supreme] Court," with the judgment becoming final when the Supreme Court affirms a conviction on the merits or denies certiorari. *Id.* "For all other petitioners, the judgment becomes final at the 'expiration of the time seeking such review'—when the time for pursuing direct review in [the Supreme] Court, or in state court, expires." *Id.* The *Gonzalez* Court thus held that where, as here, an individual in state custody "does not seek review in the State's highest court, the judgment becomes 'final' on the date that the time for seeking such review expires[,]" not "the date on

PAGE 6 – OPINION AND ORDER

which state law marks finality" through the issuance of an appellate judgment or mandate. *Id.* at 137, 150-51.

Here, Petitioner's direct appeal proceedings became final on October 13, 2016, when the fourteen-day period to request reconsideration of the appellate commissioner's dismissal order expired, effectively precluding further review by the Oregon Supreme Court. Petitioner then filed his PCR petition on December 4, 2017, tolling the AEDPA's statute of limitations. Between October 13, 2016, and December 4, 2017, 403 days accrued. Because more than 365 days elapsed before Petitioner filed his habeas petition, it is untimely and must be denied unless equitable tolling applies.

## II.     Equitable Tolling

### A.     Legal Standards

The one-year limitations period may be tolled upon a showing "'(1) that [the petitioner] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Rudin v. Myles*, 781 F.3d 1043, 1054 (9th Cir. 2014). Equitable tolling is "a flexible, fact-specific" inquiry. *Gibbs v. Legrand*, 767 F.3d 879, 885 (9th Cir. 2014). The threshold to trigger equitable tolling is "a very high bar, and is reserved for rare cases." *Yeh v. Martel*, 751 F.3d 1075, 1077 (9th Cir. 2014); *see also Spitsyn v. Moore*, 345 F.3d 796, 800 (9th Cir. 2003) (noting that equitable tolling "is justified in few cases"). A petitioner thus "bears a heavy burden to show that [he] is entitled to equitable tolling, 'lest the exceptions swallow the rule.'" *Rudin*, 781 F.3d at 1055 (quoting *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010)).

///

PAGE 7 – OPINION AND ORDER

B.  Analysis

Petitioner asks the Court to equitably toll the statute of limitations, arguing that his appellate attorney "absolutely mislead him as to when his direct appeal would be concluded." (Pet'r's Sur-Reply at 3.) Specifically, Petitioner argues that appellate counsel represented that his direct appeal "was not officially ended until the [Oregon Court of Appeals] issued an appellate *judgment*[,]" and that "but for appellate counsel's misleading factual error, [the] petition would have been timely filed." (*Id.* at 3-4.)

"Equitable tolling may be warranted in instances of unprofessional attorney behavior[.]" *Doe v. Busby*, 661 F.3d 1001, 1011-12 (9th Cir. 2011) (citing *Spitsyn*, 345 F.3d at 800-02). "[H]owever, the AEDPA deadline will not be tolled for a garden variety claim of excusable attorney neglect or mistake." *Id.* (citing *Holland*, 560 U.S. at 651-52). Only where an attorney's "acts or omissions . . . transcend garden variety negligence and enter the realm of 'professional misconduct'" may extraordinary circumstances exist, provided "the misconduct is sufficiently egregious." *Luna v. Kernan*, 784 F.3d 640, 646 (9th Cir. 2015) (simplified); *see also Doe*, 661 F.3d at 1012 (explaining that an attorney's misconduct must be "a *sufficiently egregious* misdeed like malfeasance or failing to fulfill a basic duty of client representation" to warrant equitable tolling) (simplified). Equitable tolling is unavailable when an attorney's "inaction had no effect on the timeliness" of the petitioner's federal habeas filing. *United States v. Buckles*, 647 F.3d 883, 890 (9th Cir. 2011).

In support of his request for equitable tolling, Petitioner submits a letter from appellate counsel dated October 17, 2016, the day after the appellate commissioner dismissed his appeal. (Pet'r's Sur-Reply, Ex. 2.) In the letter, appellate counsel explains why the appeal was dismissed and notes that the appellate judgment would issue in thirty to sixty days, "signal[ing] the official

PAGE 8 – OPINION AND ORDER

conclusion of [Petitioner's] direct appeal." (*Id.*) Petitioner claims that this comment constitutes "a legal representation . . . [and] conclusion[] as to the effects of the appellate proceedings[,]" and that he was entitled to rely on appellate counsel's "unequivocal" representation that "his appellate case was not closed or officially concluded until the appellate judgment issued." (Pet'r's

This Court finds Petitioner's evidence unpersuasive. Although appellate counsel did indeed advise Petitioner that the issuance of the appellate judgment would mark the official end of his direct appeal proceedings, that statement is not incorrect under state law and appears to have been made in the context of informing Petitioner of his remaining avenues for relief and the impending termination of appellate counsel's representation. (*See* Pet'r's Sur-Reply, Ex. 2 at 1 (noting the end of Petitioner's direct appeal proceedings and explaining that appellate counsel will not represent Petitioner if he seeks to pursue PCR or federal habeas relief).) Even assuming that appellate counsel's advice was intended to identify when Petitioner's direct appeal proceedings would be "final" under the AEDPA, appellate counsel expressly warned that her office "does not practice in the federal courts" and lacks expertise in federal law and procedure, and encouraged Petitioner to contact the Federal Public Defender if he had "questions about the availability of federal remedies[.]" (*Id.*) Under these circumstances, the letter, at most, may suggest a garden variety claim of excusable attorney neglect or mistake. *See Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (holding that an attorney's miscalculation of the AEDPA's limitations period and "his negligence in general" did not constitute extraordinary circumstances to warrant equitable tolling). Moreover, Petitioner provides no authority that his direct appeal attorney is obligated to advise him regarding the AEDPA's statute of limitations. *See Jackson v. Nooth*, No. 2:13-CV-00798-ST, 2014 WL 4983666, at *3 (D. Or. Oct. 1, 2014) (holding that

equitable tolling did not apply because direct appellate counsel "was under no duty" to advise the petitioner of the AEDPA's one-year statute of limitations).

In addition, Petitioner provides no evidence to suggest that he diligently pursued his rights. Although Petitioner claims that he "moved from his appeal immediately to post-conviction[,]" (Pet'r's Sur-Reply at 3), he waited over a year after the dismissal of his appeal before filing a PCR petition. Indeed, Petitioner appears to have ignored appellate counsel's advice to file a PCR petition "as soon as practical" to ensure timely filing of his federal habeas petition, (Pet'r's Sur-Reply, Ex. 2 at 2) and he provides no explanation for the delay. Furthermore, there is no evidence that Petitioner contacted the Federal Public Defender or otherwise made any efforts to clarify the requisite timing of his federal habeas petition. Petitioner therefore has not met his burden to establish that he is entitled to equitable tolling based on appellate counsel's alleged misconduct.

## CONCLUSION

For the reasons stated, the Court DENIES the Petition for Writ of Habeas Corpus (ECF No. 1), and DISMISSES this proceeding, with prejudice. Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore the Court DENIES a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

DATED this __20th__ day of July, 2023.

Karin J. Immergut
United States District Judge